Opinion of
the Court.
UNDER the royal proclamation of 1763, Thomas Barnes obtained from the Governor of the then Colony of Virginia, a warrant for 2,000 acres of land, purporting to be granted to him for military services as quarter-master sergeant in the Virginia regiment, during the then late war between Great Britain and France. On the warrant is endorsed an assignment from Barnes to Daniel Montgomery, of 1,000 acres, bearing date the 11th of April 1774; subsequent to which time, a survey was made in the name of Barnes, for the 2,000 acres, in virtue of which he obtained a patent.
It appears by the proclamation that such officer was not entitled to a warrant for 2,000, but only for 200 acres of land; yet, held that a survey executed on such warrant was confirmed for the whole amount by the act of 1779.
Parol evidence tending to impeach such warrant, is utterly inadmissible.
The recital of the services for which the warrant was granted, and consequently of the rank of the officer,are not material; hence, when there is a repugnance between the quantity of land and the rank of the officer, the latter will be rejected.
Craig, the appellant, on the 7th of December 1782, made an entry upon a treasury warrant, for 1,000 acres, interfering with the survey made in the name of Barnes; and, upon a survey made thereon, obtained a patent of an elder date than that which was granted to Barnes.
Preston, the appellee, having purchased from Barnes three-fourths of his survey, filed his bill in chancery against Craig, to compel a conveyance of the legal title; and, on a final hearing, the court below decreed that Craig should convey to Preston the land in contest; from which decree Craig has prosecuted this appeal.
The controversy in this case depends wholly upon the validity of Barnes’ survey, and turns principally upon the construction of the act of 1779, entitled “an act for adjusting and settling the title of claims to unpatented lands,” &c. The legislature of Virginia, apprehensive, as appears from the preamble to the act, that the various and vague claims to lands under the present and former governments, might produce tedious and infinite litigation and disputes, for the purpose of establishing some certain rules for settling and determining the right to such lands, enacted, that surveys of certain descriptions should be confirmed, and declared all others null and void. Among those that were confirmed, are all such as had been made upon any of the western waters before the first day of January 1778, by any county surveyor commissioned by the Masters of William and Mary College, in conformity to the rules and laws then in force, and founded upon any warrant from the Governor for the time being, for military services, in virtue of a proclamation, either of the King of Great Britain or any former Governor of Virginia.
It is not denied, that the survey in the name of Barnes was made by the proper officer, and in due time, nor is the genuineness of the warrant upon which the survey was made, controverted; but it is contended that the warrant was not issued in virtue of the proclamation. The phrase, in virtue of the proclamation, is construed by the appellant’s counsel, as demanding a strict pursuance of the terms of the proclamation; and Barnes, as quartermaster sergeant, not being entitled to more than 200 acres, according to its terms, it is inferred that the warrant for 2,000 acres was not issued in virtue thereof; and consequently, that the survey thereon is not *140 of the description of those surveys which were ratified by the act of 1779.
Whether the literal meaning of the expression, “in virtue of the proclamation,” will justify the construction which is the basis of this argument, is at least very questionable. In strict propriety, that expression does not seem to be of the same import, as the expression in pursuance of the proclamation, and cannot perhaps be considered a convertible one. The latter, no doubt, would require a strict conformity to the terms of the proclamation; but the former seems necessarily to imply no more than that the warrant should have issued by force, or in consequence of the proclamation. In this sense, Barnes’ warrant may, with propriety, be said to have issued in virtue of the proclamation of 1763. Were the construction contended for on the part of the appellant to prevail, it would impose upon the claimant under the military survey, whenever his title was contested by an adverse claim, the necessity of proving that the services for which the warrant was granted, had been performed; for in no other way could he show that the warrant had issued in strict pursuance of the proclamation. In a great majority of instances, this would be impracticable to be done. Thus, the military claims, instead of being the most secure, as they have hitherto been deemed, would become the most unsafe of any in the country; and the prevention of these numberless disputes, and that infinite litigation, which was the express object of the legislature in passing the act of 1779, would be defeated. A construction tending to produce consequences so mischievous in their nature, and so subversive of the declared object of the land law, is inadmissible. If such were the literal meaning of the phrase in question, to deviate from it, in order to avoid those evils which it was the object of the law to guard against, would be allowable, according to the soundest rules of construction. It is from the whole law taken together, and not from any particular word or phrase alone, that the intention of the legislature can be collected; and an adherence to the literal sense of a single expression in a law, regardless of the general context, and the effects and consequences, can be supported neither upon the score of reason nor authority. If, indeed, parol evidence would be inadmissible to show that the warrant *141 had not issued in conformity to the proclamation, notwithstanding the construction contended for on the part of the appellant should be adopted, the evils to be apprehended from the construction would be diminished, and the arguments against its propriety, drawn from its consequences, weakened. Still, however, if the natural import of the words of the law would not justify such a construction, it ought not to be adopted; and words, as we have already intimated, implying no more than that the warrant should have been issued by force, or in consequence of the proclamation, do not seem to warrant the construction contended for. But, admitting that construction to be correct, upon the principle that the warrant could not be impeached by matter dehors, (and upon no other principle is such a construction admissible, whatever may be the literal meaning of the words of the law,) a question then occurs, whether Barnes’ warrant will, upon its face, justify the conclusion that it has not been issued in pursuance of the proclamation. Between the services recited, for which the warrant purports to be granted, and the amount of the warrant, there is an irreconcileable repugnance; of necessity, therefore, there must be a mistake in the one or the other. The recital of the service for which the warrant was granted, does not appear to be a material or essential part of the warrant; for a considerable majority of those found upon the records in the register’s office, upon which surveys were made and patents obtained, contain no such recital, nor has their validity ever been questioned on that account. It seems, therefore, much more rational, to conclude that the mistake is in the recital of services, than the amount of the warrant, the former being an immaterial, and the latter an essential part of the warrant. An erroneous recital will not, in general, vitiate a grant; and we can see no reason why a different rule should be applied to a case of this kind, where the recital is so immaterial, that its omission would not affect the validity of the warrant. We are, therefore, of opinion that the warrant granted to Barnes is of the description of those; the surveys upon which were ratified by the act of 1779.
The objection to the survey in the name of Barnes, because he had previously assigned 1,000 acres of it to Montgomery, does not appear to be entitled to much *142 weight. We are not aware, that at that time warrants were assignable; but if they were, an assignment of part only, would not vitiate the survey made in the name of the original proprietor. Barnes, or the purchaser under him, may hold the legal title in trust for Montgomery, and subject to his equity; but this circumstance cannot affect the interest of those who claim under adverse titles.
Decree affirmed.